| | |
|---|---|
| Gabe Placide, | |
| *On Behalf of Himself and Those Similarly Situated*, | Case No. |
| | Judge |
| Plaintiff, | |
| v. | Magistrate Judge |
| Roadrunner Transportation Services, Inc.; Doe Corporation 1–10; John Doe 1–10, | Jury Demand Endorsed Hereon |
| Defendants. | |

## COMPLAINT AND JURY DEMAND

1. This lawsuit seeks redress for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), the Truth-in-Leasing Act, 49 U.S.C. § 14704 ("TILA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("Prompt Pay Act"), and unjust enrichment for failing to pay required minimum wages and unlawfully deducting amount from the wages of drivers that Defendants misclassified as independent contractors.

2. Defendant Roadrunner Transportation Services, Inc. is a domestic corporation ("Roadrunner" or "Defendants") which is owned and operated by related individuals and entities for a common business purpose: transportation of freight for Roadrunner customers.

3. To accomplish its business purpose, Roadrunner relies on hundreds, if not thousands, of long-haul, interstate truck drivers to deliver freight for Roadrunner's customers

1

across the United States.

4.      Roadrunner utilizes company drivers—i.e., drivers that Roadrunner classifies as employees (hereafter "Employee Drivers")—and drivers that Roadrunner misclassifies as independent contractors (hereafter "Drivers").

5.      According to its website, Roadrunner "is one of the nation's largest transportation companies," provides "services to customers all over North America," has "annual revenues exceeding $400,000,000."

6.      According to the Roadrunner website, Roadrunner has "more than 1,000 drivers on the road."

7.      According to the Roadrunner website, Roadrunner "operates 21 service centers in all major metros."

8.      Roadrunner's classification of Drivers as independent contractors forms a significant part of a labor scheme crafted to pay its Drivers less than the minimum wage required by federal and Ohio law, to shift Roadrunner's business expenses and risk to the Drivers, and to defeat all federal and state protections for employees, such as Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, the National Labor Relations Act, and wage protection statutes such as the FLSA and similar state statutes.

9.      By misclassifying Drivers as independent contractors, Roadrunner also evades the tax burdens that it would bear for employees—e.g., Social Security, Federal Unemployment Tax, etc.—which burdens are also shifted to the misclassified Drivers.

10.     By unlawfully treating Drivers as independent contractors, Roadrunner obtains a competitive advantage over competitor trucking companies that properly treat their drivers as

2

employees and pay required wages and taxes in compliance with federal and state law.

11.     As one of the nation's largest trucking companies, Roadrunner's unlawful practices drive down wages across the trucking industry and undercut fair labor practices throughout the United States.

12.     Since at least 2018, if not before, Roadrunner knowingly misclassified Drivers, including Plaintiff and proposed class members, as independent contractors, failed to pay them statutorily-required minimum wages, and made unlawful deductions from their earned compensation.

13.     Plaintiff brings his federal minimum wage claims under the collective action provision of the FLSA as set forth in 29 U.S.C. §216(b).

14.     Plaintiff brings his Ohio state law claims and TILA claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, Plaintiff brings this action under 29 U.S.C. § 216(b) of the FLSA. 28 U.S.C. §§ 2201 and 2202 confer jurisdiction over Plaintiff's claims for declaratory relief.

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this case involves diversity of citizenship among the parties.

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1337 because the claims arise under federal laws regulating commerce.

18.     This Court has supplemental jurisdiction over the state law claims raised by virtue

3

of 28 U.S.C. §§ 1332 and 1367, including § 1367(a).

19.     The amount in controversy in this matter exceeds the sum or value of $5,000,000 exclusive of interest and costs.

20.     Plaintiff and at least one member of the proposed collective action class are citizens of a state different from that of at least one Defendant.

21.     Citizenship of the members of the proposed collective action class is dispersed across the United States.

22.     Plaintiff and Drivers' claims involve matters of national and/or interstate interest.

23.     Plaintiff and Drivers were engaged in commerce in their work for Defendants.

24.     Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391 because Defendants reside in this District for venue purposes and/or are subject to the Court's personal jurisdiction in that Defendants have substantial contacts with and conduct business in this District.

## PARTIES

**Plaintiff**

**Gabe Placide**

25.     Plaintiff Gabe Placide is a resident of Ohio.

26.     Although classified as an "independent contractor," Plaintiff was, at all relevant times, an "employee" of Defendants under the Fair Labor Standards Act and Ohio law.

27.     Plaintiff has given written consent to join this action.

**Defendants**

**Roadrunner Transportation Services, Inc.**

28.     Roadrunner Transportation Services, Inc. is a domestic corporation authorized to

4

do business under the laws of Wisconsin.

29.     Roadrunner Transportation Services, Inc.'s principal place of business is in Milwaukee, Wisconsin.

30.     Roadrunner Transportation Services, Inc.'s headquarters is in Cudahy, Wisconsin.

31.     Roadrunner Transportation is the corporate entity that appears on Plaintiff's weekly "Contractor Settlements" for the work he completed for Defendants.

32.     Roadrunner Transportation Services, Inc. is the entity on Plaintiff's Independent Contractor Agreement.

33.     Roadrunner Transportation Services, Inc. has substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

34.     Roadrunner Transportation Services, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

35.     At all relevant times, Roadrunner Transportation Services, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

36.     Roadrunner Transportation Services, Inc. is Plaintiff's "employer" and similarly employees situated employees as that term is defined by the FLSA and Ohio law.

37.     At all relevant times, Roadrunner Transportation Services, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the

meaning of the phrase as used in the FLSA.

38. Roadrunner Transportation Services, Inc.'s gross revenue exceeds $500,000 per year.

39. Although classified by Roadrunner Transportation Services, Inc. as an "independent contractor," Plaintiff Gabe Placide was, at all relevant times, an "employee" of Defendants under the Fair Labor Standards Act and the Ohio Const. Art. IV, § 34a.

40. Upon information and belief, Roadrunner Transportation Services, Inc. is a motor carrier registered with the U.S. Department of Transportation.

41. Roadrunner Transportation Services, Inc. determines whether to permit a Driver to complete deliveries for Roadrunner Transportation Services, Inc.

42. Roadrunner Transportation Services, Inc. has the authority to terminate the contracts entered between itself and Drivers.

43. Roadrunner Transportation Services, Inc. has terminated the contracts of Drivers during the relevant time period.

44. Roadrunner Transportation Services, Inc.'s primary source of revenue is transportation services.

45. Upon information and belief, Roadrunner Transportation Services, Inc. maintains records on Drivers and, alone or in conjunction with Roadrunner Expedited, Inc., determines the wages, working conditions and classification for Drivers.

46. Defendant conducts business throughout the United States, including Ohio.

47. Defendant benefits from the scheme to misclassify Drivers.

48. All actions and omissions described in this complaint were made by Defendants

6

directly or through their supervisory employees and agents.

49.     At all relevant times, Defendant Roadrunner Transportation Services, Inc. was Plaintiff's "employer" and the "employer" of proposed class members under the Fair Labor Standards Act and Ohio Const. Art. IV, § 34a.

**John Doe 1-10 Corporation**

50.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Roadrunner operation, and qualify as "employers" of Plaintiff and the Drivers as that term is defined by the FLSA and Ohio wage law.

51.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

52.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the Drivers at Roadrunner as that term is defined by the FLSA and Ohio wage law.

53.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

54.     Upon information and belief, Mark A. DiBlasi is Plaintiff and Driver's "employer" under the FLSA and Oh. Const. Art. IV, Section 34a.

## FACTS

55.     Roadrunner Transportation Services, Inc. provides nationwide less-than-truckload ("LTL") transportation services.

7

56.     Plaintiff and the Drivers, as truck drivers, are integral to Defendants' business of providing LTL transportation services.

57.     Defendants hired Plaintiff and Drivers to transport goods in interstate commerce.

58.     Defendants require Drivers to attend a three-day, uncompensated orientation at Defendants' facilities in Milwaukee, Wisconsin before being presented with an Independent Contractor Operating Agreement ("ICOA").

59.     Defendants require Drivers to sign an ICOA by which Drivers lease their trucks to Defendants. The ICOA purports to classify Drivers as "independent contractors."

60.     Defendants require Drivers who do not own a truck to sign a lease agreement ("Lease") to rent trucks and other necessary tools of the trade.

61.      Defendants also hire other truck drivers as "Company Drivers," who upon information and belief, are treated as "employees" by Defendants (also referred to as "Employee Drivers").

62.     In turn, Defendants create a tiered Driver system. Where Drivers, like Plaintiff, are subject to an ICOA and Lease system, while Defendants' Employee Drivers are not subject to the ICOA and Lease system.

63.     Roadrunner drafted both the ICOA and Lease and presented them to Drivers on a "take it or leave it" basis.

64.     The ICOA and its various attachments are over fifty pages in length and their terms are not easily deciphered, especially for Drivers who are generally not sophisticated in analyzing or understanding contracts like the ICOA and Lease.

65.     Defendants do not give Drivers adequate time to review the ICOA and Lease or

8

seek legal advice before signing.

66. The ICOA must be signed by Drivers in order to work for Defendants.

67. The Drivers who do not otherwise have a truck to drive must sign both the Lease and ICOA in order to work for Defendants.

68. The Drivers who do not otherwise have a truck to drive must select one of the trucks made available by Defendants for lease at the conclusion of the three-day orientation period.

69. The trucks made available for lease to the Drivers who do not otherwise have a truck to drive are used, older trucks that frequently break down and frequently require maintenance.

70. Upon information and belief, Drivers, including Plaintiff, were provided a copy of the Roadrunner Handbook, the same Handbook provided to Employee Drivers, and were trained in Roadrunner's policies, practices, and procedures in areas such as driving rules, handling loads, safety, pet policy, etc., along with Employee Drivers.

71. The ICOA and Lease make the Driver liable for costs of operating the truck, including, *inter alia*, fuel, insurance, and maintenance.

72. While the ICOA states that Drivers are "independent contractors," Defendants retain the authority to exert near complete control over Drivers' work and ensure Drivers cannot operate as independent businesses, but instead must remain economically dependent on Defendants.

73. Defendants have exclusive control over the assignment of loads or deliveries to Drivers.

74. Defendants control Drivers' work schedules through their exclusive control over

9

the assignment of loads to Drivers and by requiring them to work exclusively for Roadrunner.

75.     Defendants control when, where, and how Drivers deliver freight.

76.     Defendants dispatch Drivers to jobs that Defendants wish them to perform.

77.     Defendants monitor and control the time of Drivers' departure and the time of arrival.

78.     Defendants can dictate and monitor the route Drivers travel.

79.     Defendants monitor Drivers' location, speed, control of the truck, route, estimated arrival time, rest time, driving time, and other aspects of job performance by an on-board computerized system.

80.     By way of example of the control exercised by Defendants over Drivers, Plaintiff received communications and instructions on a daily or near daily basis by their "dispatchers" regarding driving speed, arrival times, rest times, etc.

81.     Defendants control the amounts charged to the customers whose freight the Drivers deliver.

82.     Drivers are paid by the load at a predetermined per-mile rate based on a table created by Defendants.

83.     Defendants dictate the means by which Drivers are to perform their job and require Drivers to adhere to Defendants' policies.

84.     Defendants determine the locations where Drivers are able to purchase fuel.

85.     Drivers do not have discretion to purchase fuel from locations Defendants have not authorized and approved.

86.     Defendants determine the locations where Drivers are able to repair their vehicles.

87.     Drivers do not have discretion to purchase maintenance or repairs from locations Defendants have not authorized and approved.

88.     Drivers have no opportunity for profit and loss based on their entrepreneurial skill because Roadrunner exercises exclusive control over their load assignments, compensation rates, where drivers may purchase fuel, and where drivers may purchase repairs.

89.     When Drivers are transporting cargo, the trucks are usually in motion eleven hours a day or more.

90.     Between driving and waiting, Drivers are routinely on duty for 14 hours a day.

91.     Drivers cannot leave the truck for any significant period of time and must remain in the truck on long-haul trips across the country.

92.     Drivers cannot leave the truck for any significant period of time and must remain with the truck when the truck is being repaired

93.     On information and belief, Roadrunner has difficulty retaining experienced Drivers and therefore aggressively recruits inexperienced drivers who are integral to their business model.

94.     On information and belief, Roadrunner also has a high Driver turnover rate among its new, inexperienced drivers.

95.     Drivers were financially responsible for damage to their trucks that they incurred while driving.

96.     Defendants control what equipment Drivers use to perform their work, including the type of truck, communication system used by Drivers, the electric on-board recorder (used to record the amount of time a vehicle is being driven), and the trailers used to complete the work for

11

Defendants.

97.     Defendants have complete control over whether and how Drivers may use such equipment. Defendants also control how the equipment is to be operated, whether and when Drivers must fuel trucks, maintenance requirements and schedules, the appearance of the vehicles, maintenance inspection by the company, oil changes, and inspection reports.

98.     Defendants determine the schedule and requirements for Drivers to inspect, repair, and maintain the trucks, which are part of Drivers' job duties.

99.     Defendants determine the facilities and providers of such services that Drivers must use for inspections, maintenance, and repairs.

100.    The ICOA states that Drivers may drive for other companies with Roadrunner's permission and if the Drivers meet certain conditions set by Roadrunner.

101.    Although the ICOA purports to allow Drivers to drive for other companies, Defendants do not grant such permission unless Defendants' dispatchers are unable to find a load to assign to the Driver. Although the ICOA purports to allow Drivers to turn down load assignments, as a practical matter, Roadrunner can and does punish Drivers for turning down a load by delaying or withholding subsequent assignments to the Driver.

102.    Defendants retain exclusive control over other essential functions necessary for operation of the Drivers so-called "independent" operations, including, *inter alia*, locating customers, employing a sales force, employing brokers, purchasing and developing advertising, determining the freight that Drivers will carry, the terms and conditions under which that freight will be picked up and delivered, the rates that customers will be charged for the deliveries, employing dispatchers, assigning loads to Drivers, performing billing and payroll, and performing

12

repair and maintenance services.

103.    Drivers are not allowed to use outside brokers to coordinate new or alternate loads to transport.

104.    As a result, Drivers are unable to have any independent financial relationships with any customers of Defendants or anyone other than Defendants.

105.    The Roadrunner driver Handbook provided to both Drivers and Employee Drivers sets forth policies of "the Company" (which is defined as "Roadrunner Transportation Services, Inc., and its subsidiary companies"), including, *inter alia*, the drug and alcohol policy, electronic communications and technology policy, equal employment opportunity policy, human rights policy and statement, outside employment policy, payroll and leave policy, personal appearance and dress code policy, safety policies, and "the Company's" Code of Business Conduct and Ethics.

106.    Through deductions from Drivers' Contractor Settlements, Defendants require Drivers to pay for a wide variety of expenses and costs that are primarily for the benefit of Roadrunner, including tens of thousands of dollars per year for trucks, "empty mileage" costs (i.e. the costs for travel when not transporting items for customers), necessary equipment (e.g., use of trailers and communication equipment), fuel, oil, tires, spare parts, tolls, insurance, repairs, inspections, maintenance and repairs for the trucks and trailers owned by Defendants, road taxes, mileage taxes, federal heavy vehicle use taxes, registration, licensing, and permitting fees, among other expenses.

107.    Through deductions from Drivers' Contractor Settlements, Defendants require Drivers to pay $50 per week for cell phone data.

108.     Through deductions from Drivers' Contractor Settlements, Defendants require Drivers to pay $50 per week for a tracking device.

109.     Under the Lease, Defendants require Drivers to pay the lease payment for every week even if the Driver is never assigned a load in that week.

110.     For instance, Defendants required Plaintiff to make a $627.25 lease payment every week even if Plaintiff did not receive or take any loads because Defendants did not assign any deliveries or due to Plaintiff's vehicle breaking down.

111.     Defendants continue to deduct expenses and costs from Drivers regardless of how many loads Roadrunner assigns a Driver in any given workweek, which could be none at all.

112.     Defendants also control the payments received by Drivers for the work they perform.

113.     Defendants control the Drivers' use of their earnings by requiring Drivers to fund and maintain so-called "maintenance" and "escrow" accounts and maintain minimum balances held by Defendants and funded through deductions made by Defendants from Drivers' Contractor Settlements. Defendants then use the funds siphoned from Drivers' Contractor Settlements to pay themselves for the numerous employer expenses listed above.

114.     All of the above-described controls, including the setting of compensation rates, give Defendants the power to determine Drivers' earnings and working conditions.

115.     On information and belief, Roadrunner exercises similar controls over how its Employee Drivers operate and how its Drivers operate; there is no material difference in their dependence upon Roadrunner for their livelihood.

116.     On information and belief, Drivers generally complete the same job duties as

14

Roadrunner Employee Drivers and have no more or less skill than Employee Drivers.

117. Because Roadrunner offers to arrange to lease a truck to Drivers (which Drivers then lease back to Roadrunner with their ICOA) for no money down and with no credit check, offers to arrange for all insurance needed by Drivers and to advance the costs of that insurance, as well as other costs of operation (such as fuel), Drivers need no more business skill than Employee Drivers and need not make any more capital investment than Employee Drivers.

118. Plaintiff did not make any significant capital investment in his operation; costs, including the costs of the lease payments, are advanced by Roadrunner and paid for out of their earnings from carrying loads for Roadrunner.

119. In comparison, Roadrunner has invested heavily in providing transportation services, Defendants own and operate 21 service centers across every major metropolitan area in the United States, maintain strategic rail partnerships, have more than one-hundred pickup and delivery partners, employ a sales force, employing brokers, purchase and develop advertising, employing dispatchers, obtain loads for Drivers, performing billing and payroll, and own the vehicles that are leased to Plaintiff and the Drivers.

120. In addition to the controls set forth above which render Drivers economically dependent on Defendants, the Lease signed by Plaintiff and other Drivers give Defendants even more control over those who enter into a Lease.

121. Upon information and belief, Defendants can place Drivers in default of the Lease by terminating the ICOA, which Defendants may do at will.

122. Upon information and belief, the Lease also provides that Drivers are in default of the Lease if they are in default in payment or performance of any indebtedness or obligation owed

by the Driver to any parent, affiliate, or subsidiary under any other agreement or instrument.

123. In other words, if Drivers fail to meet any of the numerous obligations under the ICOA or fail to pay any of the numerous fees/deductions set forth in the ICOA, Defendants can place Drivers into default of the Lease.

124. Drivers who Defendants place into default of their Lease are subject to having their truck repossessed and having all of their remaining lease payments accelerated and deemed due and owing, which can amount to tens of thousands of dollars.

125. In turn, Drivers who leave Roadrunner are likely to have their credit impacted and are more likely to fail background checks for other trucking companies across the country.

126. Drivers who Defendants place into default under the Lease are also subject to having the amounts they owe on their Leases deducted from their Contractor Settlements and from the "escrow" and "maintenance" funds mandated by the ICOA.

127. The threat of having the entire amount of the Lease become immediately due, coupled with the threat of having the truck repossessed, along with the additional fees and costs, results in Roadrunner exerting additional control over Drivers who lease trucks; those Drivers have little or no choice but to keep working for Roadrunner and submit to its control or they risk losing their truck and being saddled with additional charges even if they are not being paid required wages and the work is unprofitable.

128. This scheme shifts the risk of trucking business downturns from Defendants to Drivers, as Defendants are not obligated to give Drivers any specific amount of work while Drivers have continuing obligations to Roadrunner under the Lease.

129. As a result of the facts alleged herein, Drivers are not independent contractors, but

16

instead employees of Roadrunner which has suffered and permitted (and continues to suffer and permit) Drivers to work.

130.     Upon information and belief, Defendants did not maintain records of hours worked by Drivers each day and each workweek, as required by the Fair Labor Standards Act and Ohio law.

131.     Roadrunner fails to pay FLSA and state minimum wages free and clear to Drivers.

132.     Instead, Roadrunner calculates the Drivers compensation by a weekly accounting (a so-called "Contractor Settlement") that makes deductions from Drivers' pay for various expenses that are for the benefit of Roadrunner, including those described above.

133.     In some weeks, the deductions from Drivers' pay yield pay rates below federal and state minimum wage requirements.

134.     By way of example only, despite the many hours of work Plaintiff performed including driving hundreds or thousands of miles for Defendants and performing other non-driving work, such as conducting pre- and post-trip inspections of the truck, waiting to load or unload, loading or unloading, fueling, repairing and maintaining the truck, hooking and unhooking empty trailers, preparing logbooks and other paperwork, compensable sleeper berth time, and performing other activities and services.

135.     Plaintiff received a *negative* net settlement as reflected on his settlements for pay periods ending on June 26, 2019; July 1, 2019; August 14, 2021; November 6, 2019; November 20, 2019; December 19, 2019; and February 12, 2020.

136.     Plaintiff's negative net settlement balances for pay periods ending on June 26, 2019; July 1, 2019; August 14, 2021; November 6, 2019; November 20, 2019; December 19, 2019;

17

and February 12, 2020, resulted in Plaintiff *owing* Defendants money for each hour he worked.

137.     In other words, in each of these workweeks, Defendants' deductions resulted in Plaintiff not being paid at least the minimum wage for each hour worked.

138.     In some weeks, Defendants failed to pay Plaintiff and Drivers the minimum wage for each hour worked.

139.     Defendants' conduct caused Drivers to suffer the loss of wages, additional tax burdens, insurance obligations, and a variety of other monetary and non-monetary compensable harm.

140.     Defendants' unlawful conduct, as set forth in this Complaint, was intentional, willful, and/or in bad faith, and has caused significant damages to Plaintiff and Drivers.

141.     Defendants' failure to pay Plaintiff and Drivers the minimum and other proper wages required by federal and state law was willful.

142.     Defendants were aware or should have been aware that the law required them to pay Plaintiff and Drivers minimum wages required by federal and state law.

143.     Upon information and belief, Defendants apply the same unlawful policies and practices to the Drivers in every state in which they operate.

144.     The ICOA, individually and in combination with the Lease, is unlawful and unconscionable and unjustly enriches Defendants at the expense of Drivers insofar as, *inter alia*, they (a) call for the employment of Drivers but claim them to be independent contractors; (b) deduct substantial sums from Drivers' wages based on the claim that Drivers are independent contractors when in fact they are employees; (c) allow Defendants to place Drivers in default of their Leases at will and impose all of the draconian financial consequences such default entails;

18

(d)  shift Defendants' risk of business downturn to Drivers; (e) make Drivers responsible for the costs of carrying and maintaining Defendants' fleet of trucks; and (f) exact profits and reimbursements from Drivers who are, in fact, employees.

145.    The ICOA also purports to alter the rights of Drivers under the FLSA in the event they are reclassified as employees and purports to require Drivers to indemnify Roadrunner for damages caused by Defendants' misclassification of the Drivers. These terms are unconscionable, illegal, and violate public policy.

146.    As noted above, Roadrunner has extremely high turnover rates among its Drivers and therefore requires a steady stream of new Drivers.

147.    To recruit persons who may be willing to work for Roadrunner as a Driver, Roadrunner relies on "recruiters."

148.    Roadrunner recruiters use "hard-sell" tactics to recruit prospective Drivers.

149.    Roadrunner recruiters do not rely on the terms of the ICOA to guide the discussions with prospective Drivers prior to the execution of the agreement. Instead, recruiters guide Drivers through oral representations and specifically-designed recruiting materials. These include, for instance, information packets and Roadrunner recruiting webpages that include statements regarding pay rates and compensation that are designed to mislead Drivers.

150.    To entice Drivers to drive for Roadrunner as lease operators, Roadrunner and its agents made false representations to them regarding the amount of money they would make as lease operators.

151.    In or around the start of his employment, Roadrunner through its agents represented to Plaintiff that he would make at least $2,000 a week in net income as a lease operator.

152.     Roadrunner, though its agents, made these representations verbally, in written materials such as emails, other drivers' paystubs, Roadrunner's "earning calculator", and Roadrunner web postings.

153.     Plaintiff and the Drivers justifiably relied on Roadrunner's representations when they entered into the Lease and ICOA with Roadrunner.

154.     Despite their efforts, Plaintiff and the Drivers did not earn the income promised or average the revenue per mile that was promised. In fact, Roadrunner regularly assigned Plaintiff loads that were far less profitable than promised and even unprofitable after accounting for the expenses of carrying the loads that Roadrunner required Plaintiff to bear.

155.     As a result, Plaintiff and the Drivers did not earn the income that Roadrunner represented they would earn.

156.     Roadrunner was in sole possession of the information regarding the actual compensation rates paid to Drivers and was aware that Plaintiff and the Drivers would not earn the income that it promised, but it made the promises anyway to entice Plaintiffs to sign the ICOA and Lease agreements that furthered its illegal labor scheme.

157.     Upon information and belief, Roadrunner underpaid Drivers by paying them less than the percentage of its adjusted gross revenue specified in the ICOA, but because Roadrunner failed to provide drivers with the freight bill or documentation of the amount Roadrunner billed its customers for shipments, Drivers could not verify or dispute their compensation.

158.     Because of Roadrunner's failure to provide Drivers with the freight bill or other documentation showing the rates Roadrunner charged its customers for the shipments, Drivers were unable to ensure they were being properly paid, or to detect or dispute the disparity between

what Roadrunner had agreed to pay and what Roadrunner actually paid, which caused Drivers to suffer financial injury.

159.     Roadrunner violated TILA and its enforcing regulations by failing to adhere to the required lease provisions regarding Drivers' compensation and provision of the freight bill or other form of freight documentation, which caused Drivers financial injury.

### Collective Action Allegations

160.     Plaintiff brings the First Count on behalf of himself and all similarly situated current and former Drivers at Roadrunner during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

161.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully misclassifying Plaintiff and the FLSA Collective as independent contractors, refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked. Plaintiff's claims are essentially the same as those of the FLSA Collective.

162.     Defendants' unlawful conduct is pursuant to a company policy or practice.

163.     Defendants are aware or should have been aware that federal law required the Delivery Drivers to be classified and paid as employees based on the circumstances of their work and the economic reality of the situation.

164.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

21

165.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

166.     The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

167.     The FLSA Collective members are readily identifiable and ascertainable.

168.     In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

### The Ohio Rule 23 Class

169.     Plaintiff brings Counts II, III, IV, and V under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All individuals who have worked as Drivers for Defendants in the State of Ohio between the date six years prior to the filing of the Complaint and the date of final judgment in this matter ("Ohio Rule 23 Class").

170.     Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

171.     The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

172.     The hours assigned and worked, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

173.     All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

174.     For the purpose of notice and other purposes related to this action, Drivers' names and contact information are readily available from Defendants.

175.     Notice can be provided by means permissible under Rule 23.

176.     The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

177.     There are more than 50 Rule 23 Class members.

178.     Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

179.     Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a and O.R.C. § 4113.15.

180.     Plaintiff and the Rule 23 Class members have also unjustly enriched Defendants in the same way—by paying the costs associated with maintain and operating otherwise-unprofitable trucks for Roadrunner.

181.     Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

182.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

183.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

184.	A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

185.	This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

186.	Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.	Whether Plaintiff and the Rule 23 Class members were misclassified as independent contractors;

b.	Whether Plaintiff and the Rule 23 Class members were subject to the same or similar terms of employment and compensation;

c.	Whether Plaintiff and the Rule 23 Class members had the same or similar job duties;

d.	Whether Plaintiff and the Rule 23 Class were subject to an illegal lease agreement;

e.	Whether Plaintiff and the Rule 23 Class were paid minimum wage;

f.	Whether Plaintiff and the Rule 23 Class were actually paid the wage rate they were promised by Defendants;

g.	Whether Plaintiff and the Rule 23 Class conferred a benefit on Defendants that Defendants were aware of and accepted, and whether it would be unjust for Defendants to retain that benefit without compensating for it;

24

h. Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

i. The nature and extent of class-wide injury and the measure of damages for those injuries.

187. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

188. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

**The TILA Rule 23 Class**

189. Plaintiff brings Count VI under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All individuals who have worked as Drivers for Defendants between the date of four years prior to the filing of the Complaint and the date of final judgment in this matter ("TILA Rule 23 Class").

190. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

191. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

192. The hours assigned and worked, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

193. All of the records relevant to the claims of Rule 23 Class Members should be found

25

in Defendants' records.

194.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

195.    Notice can be provided by means permissible under Rule 23.

196.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

197.    There are more than 50 Rule 23 Class members.

198.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

199.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the Truth in Leasing Act, 49 U.S.C. § 14704.

200.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

201.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

202.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

203.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a

large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

204.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

205.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.   Whether Defendants are a carrier or broker providing transportation or service;

b.   Whether Defendants are subject to jurisdiction under 49 U.S.C. § 13501, *et seq.*;

c.   Whether Plaintiff and the Rule 23 Class were actually paid the wage rate they were promised by Defendants;

d.   Whether Defendants compensated Drivers in the manner and amounts specified in the ICOA, as required under 49 C.F.R. § 376.12(d);

e.   Whether Defendants gave Drivers a copy of the rated freight bill at or before the time of settlement as specified in the ICOA, as required under 49 C.F.R. § 376.12(g);

f.   Whether Defendants provided Drivers with copies of the documents necessary to determine the validity of charge-back items and the computation of those charges as specified in the ICOA, as required by 49 C.F.R. § 376.12(h); and

g.   The nature and extent of class-wide injury and the measure of damages for those injuries.

206.     In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

207.     In recognition of the services Plaintiff has rendered and will continue to render to

the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

**Causes of Action**

**Count I**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

208.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

209.    Plaintiff and the FLSA Collective were misclassified as independent contractors by Defendants.

210.    Despite this label placed on their relationship by Defendants, Plaintiff and the FLSA Collective were employees of Defendants under the FLSA.

211.    Defendants took deductions from the pay of Plaintiff the FLSA Collective for expenses that served to benefit Defendants and dropped Plaintiff's and the FLSA Collective's wages below minimum wage in some workweeks.

212.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

213.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

214.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**Count II**
**Failure to Pay Minimum Wages – Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Ohio Rule 23 Class)**

28

215.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

216.    Plaintiff and the Ohio Rule 23 Class were misclassified as independent contractors by Defendants.

217.    Defendants took deductions from the pay of Plaintiff the Ohio Rule 23 Class for expenses that served to benefit Defendants and dropped Plaintiff's and the Ohio Rule 23 Class's wages below minimum wage in some workweeks.

218.    As a result of Defendants' deductions, in some weeks Plaintiff and the Ohio Rule 23 Class were not paid minimum wage for the hours they worked.

219.    By not paying Plaintiff and the Ohio Rule 23 Class at least minimum wage for each hour worked, Defendants have violated the Ohio Constitution, Article II, § 34a.

220.    As a result of Defendants' violations, Plaintiff and the Ohio Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count III**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Ohio Rule 23 Class)**

221.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

222. During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Ohio Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

223. O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Ohio Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

224. By diverting a portion of the wages paid to Plaintiff and the Ohio Rule 23 Class back to the company by making deductions from Plaintiff and the Ohio Rule 23 Class's wages, Defendants have failed to pay Plaintiff and the Ohio Rule 23 Class all wages due to them.

225. Upon information and belief, on one or more occasions, Plaintiff and the Ohio Rule 23 Class were not paid in accordance with the agreed-upon piece-rate for each job.

226. By failing to pay Plaintiff and the Ohio Rule 23 Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

227. Plaintiff and the Ohio Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

228. Plaintiff's and the Ohio Rule 23 Class's entitlement to the wages sought herein is and has been undisputed.

229. Because there is no dispute that Plaintiff and the Ohio Rule 23 Class have been entitled to minimum wage, Plaintiff and the Ohio Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count IV**
**Damages Pursuant to O.R.C. § 2307.60**

**(On Behalf of Plaintiff and the Ohio Rule 23 Class)**

230. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

231. A willful violation of the FLSA is a criminal act. 29 U.S.C. § 216(a).

232. By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Ohio Rule 23 Class have been injured as a result.

233. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

234. As a result of Defendants' willful violations of the FLSA, Plaintiff and the Ohio Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**Count V**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Class)**

235. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

236. Plaintiff and the Ohio Rule 23 Class have conferred a benefit on Defendants by leasing, paying to maintain and operate, and using Defendants' used, older trucks that frequently break down and require maintenance to complete Defendants' deliveries.

237. By requiring Plaintiff and the Ohio Rule 23 Class to lease, maintain, and operate their used, older trucks that frequently break down and require maintenance, Defendants continue to profit from otherwise unusable and unreliable vehicles by shifting the risks and burdens of operating such vehicles onto the Drivers.

31

238. By misclassifying Plaintiff and the Ohio Rule 23 Class as independent contractors, Defendants avoided substantial businesses expenses and passed those business expenses off on Plaintiff and the Ohio Rule 23 Class.

239. Defendants' unlawful employment policies allowed Defendants to operate more profitably, including by decreasing Defendants' liabilities and cost of doing business, freeing capital for investment, and increasing Defendants' competitiveness in the trucking industry.

240. Defendants are aware of and have accepted these benefits conferred on them by Plaintiff and the Ohio Rule 23 Class.

241. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by Plaintiff and the Ohio Rule 23 Class without commensurate compensation.

242. Plaintiff and the Ohio Rule 23 Class are entitled to equitable restitution for the uncompensated work and benefits they provided to Defendants.

### Count VI
### Violation of the Truth in Leasing Act – 49 U.S.C. § 14704
### (On Behalf of Plaintiff and the TILA Rule 23 Class)

243. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

244. Upon information and belief, Defendants violated the provisions of the Truth in Leasing Act, 49 U.S.C. § 14704, and 49 C.F.R. § 376.12 by, *inter alia*:

    a. Failing to compensate Drivers in the manner and amounts specified in the ICOA, which Defendants required Drivers to sign, as required under 49 C.F.R. § 376.12(d);

32

b. Failing to give Drivers a copy of the rated freight bill at or before the time of settlement as specified in the ICOA, which Defendants required Drivers to sign, and as required under 49 C.F.R. § 376.12(g); and

c. To provide Drivers with copies of the documents necessary to determine the validity of charge-back items and the computation of those charges as specified in the ICOA, which Defendants required Drivers to sign, as required by 49 C.F.R. § 376.12(h).

245. As a result of these violations, Plaintiff and the TILA Rule 23 Class are entitled to damages, including, but not limited to: the value of unpaid wages Plaintiffs were unable to verify, the value of debts charged against them by Defendants after Plaintiff and TILA Rule 23 Class stopped working for Defendants, punitive damages, recovery of attorney's fees, costs, and other expenses in this action, and other equitable relief deemed appropriate by the Court as provided by 49 U.S.C. § 14704.

WHEREFORE, Plaintiff Gabe Placide prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, an appointment of Plaintiff and their Counsel to represent the collective action members.

B. Unpaid minimum wages and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D. Designation of Plaintiff as representative of the Ohio Rule 23 Class and as representative of the TILA Rule 23 Class, and counsel of record as Class Counsel.

E. An award of unpaid minimum wages due under Section 34a and O.R.C. § 4113.15.

F. An award of damages under Section 34a, based on Defendants' failure to pay wages, calculated as additional two times of back wages.

G. An award of restitution for unjust enrichment.

H. Liquidated damages under O.R.C. § 4113.15.

I. Compensatory and punitive damages under O.R.C. § 2307.60.

J. An award of statutory, compensatory, liquidated damages, appropriate statutory penalties, restitution, and other make whole relief under TILA to be paid by Defendants according to proof.

K. Appropriate equitable and injunctive relief to remedy Defendants' violations of law, including but not limited to an order determining that Defendants' practices in failing to adhere to the TILA-required ICOA provisions and violate the TILA.

L. An award of prejudgment and post-judgment interest.

M. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

N. Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,


/s/ *Phil Krzeski*
Andrew R. Biller (*pro hac vice forthcoming*)
Andrew P. Kimble (*pro hac vice forthcoming*)

34

Philip J. Krzeski (0095713 (*admitted*)
Nathan B. Spencer (0092262) (*admitted*)
Riley E. Kane (*pro hac vice forthcoming*)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*
*pkrzeski@billerkimble.com*
*nspencer@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

/s/ Joseph Michael Lyon
Joseph M. Lyon, Esq.
The Lyon Firm
2754 Erie Ave.
Cincinnati, Ohio 45208
jlyon@thelyonfirm.com

*Counsel for Plaintiff and putative class*

## JURY DEMAND

Plaintiff hereby demands a jury trial.

/s/ *Phil Krzeski*
Philip J. Krzeski (0095713)