# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GABE PLACIDE,<br><br>                Plaintiff,<br><br>v.<br><br>ROADRUNER TRANSPORTATION SERVICES INC., DOE CORPORATION 1–10, and JOHN DOE 1–10,<br><br>                Defendants. | Case No. 21-CV-1004-JPS<br><br>**ORDER** |

       This case comes before the Court on Defendant's motion to dismiss, in which Defendant claims that Plaintiff is judicially estopped from litigating this wage and hour lawsuit because he failed to list the lawsuit as an asset in his bankruptcy cases. ECF No. 14. Defendant also contends that the Ohio state law claims must be dismissed because the parties' contract contains a choice-of-law provision that requires claims arising from the work that Plaintiff did for Defendant to be brought under Wisconsin law. *Id.* That motion is now fully briefed. For the reasons explained below, the Court finds that judicial estoppel does not apply to this case, but it agrees that the Wisconsin choice-of-law provision controls. The Court will give Plaintiff leave to amend his complaint to bring wage and hour claims under Wisconsin state law. Before filing another motion to dismiss, the parties *must* meet and confer, as ordered in ECF Nos. 10 and 18, to determine whether Defendant's concerns can be addressed via an amended complaint without input from the Court. (Ideally, this is how the parties would have dealt with the choice of law issue.)

1. **RELEVANT FACTS**

Plaintiff is a long-haul trucker who contracted with Defendant, a trucking company, under two Independent Contractor Operating Agreements (the "ICOAs"), to provide transportation services across the country. After Plaintiff ended his relationship with Defendant, Plaintiff filed for Chapter 13 bankruptcy three times: on April 8, 2020, on October 5, 2020, and on May 22, 2021. In each filing he listed a debt that he believed, at the time, he owed to Defendant: $3,600. He did not list his potential legal claims against Defendant as assets. In each bankruptcy, Plaintiff received a stay from creditors' claims that protected his assets.

The bankruptcy court dismissed each of Plaintiff's petitions without confirming Plaintiff's proposed reorganization plan, reducing any payments, or discharging any of Plaintiff's debts. The bankruptcy court dismissed Plaintiff's most recent filing on October 5, 2021 after he failed to make payments. Plaintiff filed this matter on August 27, 2021, about five-and-a-half weeks before the bankruptcy court dismissed Plaintiff's most recent petition. Plaintiff did not amend his then-pending bankruptcy petition to include these claims. By the time Defendant filed the motion to dismiss, Plaintiff's bankruptcy petitions had all been dismissed.

Under the IOCAs, the parties agreed that the contract would be "governed by the laws of the United States and of Wisconsin, without regard to the choice-of-law rules of that or any other jurisdiction." ECF No. 15-2 at 16. The agreement also provides for Milwaukee, Wisconsin, as the venue for any claims arising from the agreement or the contractual relationship. Plaintiff has brought claims under Ohio law.

2.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (internal citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (internal citations and quotations omitted).

3.  **ANALYSIS**

    3.1  **Judicial Estoppel**

"Judicial estoppel is a matter of equitable judgment and discretion." *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012). It applies "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position," but, once his interests change, "assume[s] a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation

and quotation omitted). Courts typically consider three factors in determining whether to apply judicial estoppel to preclude a successive legal proceeding: (1) whether the party's position is "clearly inconsistent with its earlier position;" (2) whether the party "has succeeded in persuading a court to accept that party's earlier position" such that judicial acceptance of the second position "would create the perception that either the first or second court was misled;" and (3) whether the party "would derive an unfair advantage or impose an unfair detriment to the opposing party." *Knight-Celotex*, 695 F.3d at 721. These factors, however, "are not a rigid test that must be applied every time the issue of judicial estoppel is raised, but rather are general guideposts that must be considered in the context of all the relevant equities in any given case." *Id.* at 722 (citation omitted).

In *Cannon-Stokes v. Potter*, the Seventh Circuit joined a majority of circuits to hold that "a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." 453 F.3d 446, 448 (7th Cir. 2006). In that case, a plaintiff filed a $300,000 administrative claim against the defendant, filed for bankruptcy and asserted that she had no assets or valuable legal claims, received a discharge of $98,000 in debts, then proceeded with her lucrative lawsuit. *Id.* at 447–48.

In *Williams v. Hainje*, the Seventh Circuit signaled that it would expand *Cannon-Stokes* to apply even to cases where the plaintiff did not have his debts discharged in bankruptcy. 375 F. App'x 625, 626–27 (7th Cir. 2010). In *Williams*, the Seventh Circuit affirmed application of judicial estoppel to preclude a plaintiff's lawsuit even though the plaintiff had defaulted on his payments and the bankruptcy court dismissed his case. In

concluding that the plaintiff had successfully persuaded the bankruptcy court to accept his position and gained an unfair advantage, the Seventh Circuit noted that the plaintiff "received significant financial benefits during his short stint in bankruptcy," including an automatic stay under 11 U.S.C. § 362, which protected his assets from creditors for twenty months, and an approved reorganization plan that "temporarily relieved [him] of most of his debts without further interest or penalty" and "substantially reduced his debts." *Id.* The Seventh Circuit thus held that "a debtor who receives even preliminary benefits from concealing a chose in action from his creditors can still be estopped from pursuing the suit in the future" because, otherwise, debtors "could take a wait-and-see approach to disclosure by prosecuting an undisclosed claim while waiting to see how favorably the bankruptcy proceeding unfolds before discharge." *Id.* at 627–28.

Courts evaluating whether to estop a lawsuit that a plaintiff failed to list as an asset in a prior bankruptcy proceeding also consider the plaintiff's intent. *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547–48 (7th Cir. 2014) ("Honest mistakes and oversights are not unheard of."). "[D]ebtors who make innocent errors should not be punished by loss of their choses in action when they [try to set things right]." *Metrou v. M.A. Mortenson Co.*, 781 F.3d 357, 360 (7th Cir. 2015) (reversing application of judicial estoppel where plaintiff disclosed a worker's compensation claim in his bankruptcy proceedings, received a discharge of debt, pursued two tort claims based on the worker's compensation injury, then, in response to defense's motion for judicial estoppel, moved to reopen his bankruptcy to include the tort suits); *c.f. Barnes v. N.W. Repossession, Barnes v. N.W. Repossession*, LLC, 14-CV-3116, 2017 WL 4410109, at *4 (N.D. Ill. Oct. 4, 2017) (applying judicial

Page 5 of 12
Case 2:21-cv-01004-JPS   Filed 05/16/22   Page 5 of 12   Document 30

estoppel to preclude a lawsuit because of plaintiff's "repeated dishonesty before the bankruptcy court and this Court"). Indeed, the doctrine exists to "protect courts and creditors from deception and manipulation," not honest mistakes. *Spaine*, 756 F.3d at 547. In *Spaine*, the Seventh Circuit reversed application of judicial estoppel where a plaintiff disclosed the existence of her lawsuit to her trustee, and the trustee "made a decision about its value to her creditors," thus protecting the plaintiff from an inference that she "deliberately concealed her claim from the bankruptcy trustee and her creditors." *Id.* at 547.

### 3.1.1 Inconsistent Legal Positions

Applying the first *New Hampshire* factor to this case, the Court observes that Plaintiff maintained two inconsistent positions before the bankruptcy court and this Court at the same time. The complaint alleges that Plaintiff's claims began to accrue in 2018; however, Plaintiff did not include these claims in any of his bankruptcy petitions. However, in each case, he included the $3,700 debt that he owed to Defendant. On August 27, 2021, once Plaintiff undoubtedly learned of his legal claims and filed suit, he did not move to amend or voluntarily dismiss his bankruptcy case. *See Greenfield v. Kluever & Platt, LLC*, No. 09 C 3576, 2010 WL 604830, at *3 (N.D. Ill. June 10, 2011) (declining to apply judicial estoppel where a *pro se* plaintiff "forfeited the possibility of obtaining discharge of her debts" in bankruptcy court in order to pursue her civil claims); *Fricke v. Healthcare Revenue Recovery Grp., LLC*, 15 C 3364, 2015 WL 4778527, at *3 (N.D. Ill. Aug. 12, 2015) (declining to apply judicial estoppel where a plaintiff's claim accrued after she filed her bankruptcy case and she timely amended the petition to include it). Rather, Plaintiff let his payments in the bankruptcy court lapse, which resulted in the bankruptcy court dismissing Plaintiff's

case on October 4, 2021, about five weeks later. There is no clear indication that plaintiff voluntarily abandoned his bankruptcy claims. *See* ECF No. 15-2 at 330. This factor weighs in favor of applying judicial estoppel.

### 3.1.2 Success in Persuading the Bankruptcy Court to Adopt his Earlier Position

The Seventh Circuit's decision in *Williams* makes clear that "a debtor who receives even preliminary benefits from concealing a chose in action from his creditors can still be estopped from pursuing the suit in the future." 375 F. App'x at 627. In the present case, Plaintiff received stays in three of his bankruptcy cases. The first two stays were as a matter of course; he petitioned for and won the third stay. *See* 11 U.S.C. § 362(a), (c)(4). This third stay spanned for four months and protected his vehicle from repossession. While his third bankruptcy case was pending, Plaintiff also pursued his unpaid wages claim, which he filed in this court on August 27, 2021. On first blush, this would appear to suggest "a wait-and-see approach to disclosure by prosecuting an undisclosed claim while waiting to see how favorably the bankruptcy proceeding unfolds before discharge." *Williams*, 375 F. App'x at 627–28.

On the other hand, Plaintiff's success with the bankruptcy court was anemic, and short-lived at that. The bankruptcy court did not confirm a single reorganization plan in any case; thus, Plaintiff never convinced the bankruptcy court to confer the "substantial[]" and "continued" relief of reduced debts, like the plaintiff in *Williams* did. 375 F. App'x at 626. Nor did Plaintiff convince the court to discharge any of his debts, much less all of them. *Cannon-Stokes*, 453 F.3d 446 at 447–48. Rather, it appears that all he managed to do was convince the bankruptcy court to protect his vehicle

from repossession. ECF No. 20 at 5. On balance, this factor does not heavily favor judicial estoppel.

### 3.1.3 Whether Plaintiff Derived an Unfair Advantage or Disadvantaged Defendant

There is little indication that Plaintiff derived an unfair advantage, and there is no indication that Defendant has been disadvantaged. The mere fact that Plaintiff received a stay in creditors seizing his assets is par for the course in any bankruptcy proceeding; it appears he would have benefitted from the stays even if he had listed this lawsuit as an asset. *See* 11 U.S.C. § 362(a). Additionally, the stays lapsed when his bankruptcy cases were dismissed; his is not a situation where he received a windfall at the exclusion of his creditors, *Cannon-Stokes*, 453 F.3d at 447–48, or benefited from an ongoing reduction in the debt that he owed, *Williams*, 375 F. App'x at 626. As discussed above, his one meager victory was being able to keep his vehicle—which he likely needed in order to find work to pay his creditors. Any minor advantage this worked to Plaintiff while he fought off a cycle of debt and poverty can hardly be characterized as unfair. Moreover, Defendant was not disadvantaged. This factor weighs against applying judicial estoppel to Plaintiff's lawsuit.

### 3.1.4 Plaintiff's Intent

Plaintiff argues that the posture of this case belies his intent to conceal his position from the bankruptcy court or his creditors. *See* ECF No. 19 at 2. In *Williams*, the plaintiff's lawsuit was pending before the bankruptcy case was filed, so there was no question that the plaintiff realized his legal claim when he filed for bankruptcy. By contrast, here, Plaintiff filed his lawsuit while his bankruptcy case was pending, so there is some question as to whether Plaintiff realized the value of his legal claims

when he listed his assets in bankruptcy court. *See VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 16-CV-5577, 2017 WL 1163741, at *9 (N.D. Ill. Mar. 29, 2017) (declining to apply judicial estoppel where a plaintiff filed a lawsuit five months after a bankruptcy court dismissed his unsuccessful petition, noting that it was "not clearly apparent that [plaintiff] purposefully concealed its claims from the bankruptcy court").

Nevertheless, bankruptcy petitioners have a continuing duty to disclose all property, including legal claims, when acquired. *See* 11 U.S.C. §§ 541(a)(7), 1306(a)(1) (defining property within the estate to include interests that are acquired after the bankruptcy case begins). Even if Plaintiff did not know about his potential lawsuit when he petitioned for bankruptcy, he was nonetheless obligated to update his schedule of assets in order to include these claims after he filed the suit. However, he did not.

This procedural deficiency does not necessarily indicate nefariousness—it may well be that Plaintiff told his trustee or attempted to make an appropriate amendment but was, for whatever reason, unsuccessful. *See Spaine*, 756 F.3d at 547. The record on this point is lacking. There is no affidavit from Plaintiff on record, and thus no way for the Court to determine what his intent was when he neglected to include this petition. Therefore, this consideration does not favor either outcome.

### 3.1.5 Totality of Circumstances

Plaintiff contracted with Defendant to provide services in exchange for payment. Somehow, Plaintiff wound up owing Defendant thousands of dollars. Plaintiff lacked the money to pay Defendant. He also lacked the money to successfully manage his bankruptcy cases. As a result, a trustee dismissed the first bankruptcy case because Plaintiff could not pay. Similarly, the bankruptcy court dismissed Plaintiff's second and third

Page 9 of 12
Case 2:21-cv-01004-JPS   Filed 05/16/22   Page 9 of 12   Document 30

bankruptcy cases because Plaintiff failed to make payments. In the last year, Plaintiff has found himself part of a lawsuit geared at rectifying alleged violations of various federal and state laws committed by Defendant.

Plaintiff did not apprise the bankruptcy court of his newly discovered legal claims. Thus, for the period of time in which Plaintiff learned of his legal claims but failed to amend his bankruptcy schedule to reflect those assets, he presented an inconsistent position to the bankruptcy court and to this Court. But there is no evidence that Plaintiff held inconsistent positions with intent to deceive either court, or that he received any unfair advantage as a result of his actions. Plaintiff's bankruptcy cases were not successful. None of his debts were diminished, much less discharged entirely. He received two stays as a matter of course, and one stay that he requested. As the Court has discussed above, the minor victory derived from winning the final stay is not significant. In the end, it is not clear that Plaintiff received any unfair advantages from his disorganized and slip-shod approaches to litigation. There is no showing that Defendant was placed at a disadvantage.

In fact, it appears that Defendant would unduly benefit from this case's dismissal. Not only would Defendant avoid litigating the claims against it, but it could continue to pursue the debt that Plaintiff owes, which has never been discharged or diminished, and has accrued interest this entire time. Plaintiff would need to file for bankruptcy a *fourth* time to protect his assets, and there is no guarantee that he would receive any stay to protect what little he has. Defendant thus stands to win doubly. This is not a scenario in which judicial estoppel is fair to apply. Therefore, Defendant's motion to dismiss on this ground is denied.

### 3.2 Choice of Law

A court sitting in diversity must apply the choice-of-law rules of the state in which it sits which, in this case, is Wisconsin. *See Int'l Admin., Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985). It is well-settled that parties in Wisconsin may choose which law governs their contracts as long as they do not "use their freedom to escape important public policies of a state whose law would be applicable if the parties' choice of law provision were disregarded." *Am. Fam. Mut. Ins. Co. v. Cintas Corp. No. 2*, 914 N.W.2d 76, 82 (Wis. 2018) (citation and quotation omitted). Recently, in this circuit, a district court determined that a similar choice-of-law provision applied to a plaintiff's wage-and-hour claims arising from a service agreement. *Warwick v. Schneider Nat'l, Inc.*, 538 F. Supp. 3d 867, 869–71 (E.D. Wis. May 10, 2021).

In the ICOAs, the parties chose Wisconsin law to apply to their case. Therefore, the Court must determine whether Wisconsin law embraces the public policies of the state whose law would apply in the absence of the clause—in this case, Plaintiff argues, Ohio.

In Ohio, "contractual choice-of-law provisions are enforceable." *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 754 (S.D. Ohio 2013). Plaintiff does not argue that Wisconsin's wage and hour laws are repugnant to the public policies espoused in Ohio's wage and hour laws. In fact, Plaintiff acknowledges, in a footnote, that he "believes it would be proper for him to assert a claim under the wage laws of the State of Wisconsin as well, given the circumstances of his employment." ECF No. 19 at 9 n.4. He ought to do so. He signed an agreement in which he agreed to litigate the claims arising from his employment under Wisconsin law. Absent some argument that Defendant has selected Wisconsin out of a

desire to eschew Ohio's public policy concerns, it very much appears that Wisconsin law applies to this matter.

## 4. CONCLUSION

For the reasons explained above, the motion to dismiss will be granted in part and denied in part. Plaintiff's claims based on Ohio law are dismissed. Should Plaintiff wish to bring any appropriate Wisconsin state law claims, he must file an amended complaint including such claims within twenty-one (21) days of the date of this Order.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss, ECF No. 14, be and the same is hereby **GRANTED in part** and **DENIED in part** as stated in the text of this Order;

**IT IS FURTHER ORDERED** that Plaintiff's claims based on Ohio law be and the same are hereby **DISMISSED**; and

**IT IS FURTHER ORDERED** that Plaintiff may submit an amended complaint within twenty-one (21) days of the date of this Order.

Dated at Milwaukee, Wisconsin, this 16th day of May, 2022.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge